**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re:                                                                                Chapter 7

BUKUNMI GESINDE,                                                      Case No. 18-10320 (SHL)

                                                    Debtor.
---------------------------------------------------------------x
BUKUNMI GESINDE,

                                                    Plaintiff,

                            v.                                                        Adv. No. 18-01434 (SHL)

UNITED STATES DEPARTMENT OF
EDUCATION,

                                                    Defendant.
---------------------------------------------------------------x

## MEMORANDUM OF DECISION

**APPEARANCES:**

**BUKUNMI GESINDE**
*Pro se Plaintiff*
5 Post Avenue, Apartment 55
New York, NY 10034

**UNITED STATES ATTORNEY'S OFFICE FOR
  THE SOUTHERN DISTRICT OF NEW YORK**
*Counsel for United States Department of Education*
86 Chambers Street, 3rd Floor
New York, NY 10007
By:    Sharanya Mohan, Esq.
          Charles Jacob, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion for summary judgment (the "Motion") [ECF No. 16][1] filed by the United States Department of Education (the "Government" or the "Defendant") to the above-captioned adversary proceeding, in which Bukunmi Gesinde (the "Debtor") seeks to discharge her federal student loan debt. A hearing was held on the Motion on July 16, 2019, at which time the Debtor appeared *pro se*. [ECF No. 34]. Given the undisputed facts and applicable law, the Court grants the Defendant's Motion for the reasons set forth below.

## BACKGROUND

In February 2018, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. In April 2018, the Debtor filed this adversary proceeding to seek the discharge of her federal student loans under Section 523(a)(8) of the Bankruptcy Code, based on the theory that the loans constitute an undue hardship. *See* Compl. at 1 [ECF No. 1]. After the parties exchanged information during discovery, the Government sought leave to file a motion for summary judgment seeking to have the merits of the case decided without a trial. [ECF Nos. 4-15]. In March 2019, the Government filed its Motion, together with a memorandum setting forth the basis for its position. [ECF Nos. 16, 17]. In support of its motion, the Government filed three declarations with supporting exhibits. *See* Decl. of Sharanya Mohan, Danial Wolstein and Rhonda Terry [ECF Nos. 18, 19, 20]. As required by the applicable rules, the Government also submitted a Statement of Undisputed Facts, which set forth the facts that it contends are undisputed and support a grant of summary judgment. *See* Def.'s State. of Material Undisputed Facts Pursuant to Local Bankr. R. 7056-1 (the "SMF") [ECF No. 21]. Ms. Gesinde filed an

---

[1]    Unless otherwise indicated, references to the Case Management/Electronic Case Filing ("ECF") docket are to the above-captioned adversary proceeding.

2

opposition to the Motion, which included her own statement of the relevant facts, a legal argument and a stack of documents. *See* Pl.'s Resp. to U.S. Dep't Educ.'s Mot. Summ. J. (the "Plaintiff's Response") [ECF No. 25]. The Government responded by filing a written brief in reply and an additional declaration [ECF Nos. 26, 28]; it also filed a response to the facts set forth by Ms. Gesinde. *See* Def.'s Resp. to Pl.'s State. of Material Facts Pursuant Local Bankr. R. 7056-1 (the "Defendant's Response") [ECF No. 27]. Ms. Gesinde then filed an additional submission, to which the Government responded. [ECF Nos. 30, 31].[2] In July 2019, a hearing was held on the Motion at which both parties were present. *See* Transcript of Hearing, dated July 16, 2019 (the "Hr'g Tr.") [ECF No. 34].

While the parties disagree about what conclusion the Court should reach on the legal issue of the dischargeability of these student loans, the relevant facts here are undisputed. The Debtor executed a series of federal student loans between 2014 and 2018 to fund her pursuit of a medical degree from St. George's Hospital Medical School and a doctorate degree from Teachers College, Columbia University. SMF ¶¶ 1-6.[3] As of March 15, 2019, the Debtor owed an unpaid principle balance of $266,841.36 and unpaid accrued interest of $44,334.25, for a total of $311,175.61. SMF ¶ 9. All of the Debtor's loans are either subject to deferment or have yet to reach the repayment period. SMF ¶ 7.[4] As such, the Debtor has not made, nor has been obligated to make, any payments on her outstanding student loans. SMF ¶ 7. The Debtor is

---

[2]    All of the Government's filings were served on Ms. Gesinde. [ECF Nos. 22, 29, 31].

[3]    Each of the factual assertions set forth in the Government's SMF is supported by citations to competent evidence in the record. For ease of readability, the Court will decline to repeat all these citations here but instead incorporate them by reference. As noted above, Ms. Gisende has not presented evidence that disputes these facts.

[4]    This decision reflects the facts that existed at the time the Motion was fully briefed, as supplemented by the parties' statements at the hearing in July 2019. But for purposes of completeness, the Debtor's repayment obligations would have begun in September 2019. Hr'g Tr. 20:22-21:5.

3

currently enrolled in an income-based repayment plan under which her monthly payment obligation will be based on her income. Hr'g Tr. 20:5-11.

Ms. Gesinde moved to the United States to pursue her undergraduate education. SMF ¶ 10. In 2008, she received her undergraduate degree in health science with a focus on mental health from the State University of New York in Buffalo. *Id.* ¶ 11. From 2009 through 2011, she completed a master's degree in public health with a focus on toxicology and risk assessment from Tulane University. *Id.* In the year between completing her undergraduate degree and starting her graduate studies, she worked at a mental health facility taking care of residents. *Id.* ¶ 11.

From 2011 through 2014, she worked as a toxicologist at two different firms, making anywhere from $29 an hour to $54,123 a year. In 2013, she was accepted into St. George's Medical School in London. *Id.* ¶ 13. While she moved to London to start the program in 2014, she decided to end her studies at St. George's Medical School in 2016 and moved back to the United States. *Id.* From 2016 through 2017, she started two different businesses selling cosmetics and herbal supplements. *Id.* ¶ 14. In May 2017, she enrolled in a doctorate program in health education at Teachers College in Columbia University. *Id.* ¶ 15. As she explained at the hearing in July, Ms. Gesinde earned her doctorate degree from Columbia in 2019. Hr'g Tr. 14:18-19.

During her time at Columbia, Ms. Gesinde was employed as a work-study student for a few months at a salary of $16 per hour and also received a research stipend of $5,200. *Id.* ¶ 16. While she lived in an apartment in New York for the first half of 2018, she was subsequently unable to afford the apartment; she instead stayed with family in Los Angeles and Idaho and also stayed with friends; she even stayed outside once or twice a week for a brief period. *Id.* ¶ 18. At

4

the end of the summer, she traveled to Kuala Lumpur, Malaysia to spend a week volunteering and networking; she paid for that trip using funds from her student loan disbursement for the Fall 2018 semester. *Id.*

While the Debtor was not employed at the time the Government filed its Motion, Def.'s Resp. ¶ 1, she subsequently found a full-time job with a union, where she utilizes her bachelor's degree and designs websites and creates pamphlets. Hr'g Tr. 14:21-15:2.[5]

The Debtor has estimated monthly expenses of $900, which includes food and shelter. SMF ¶ 21. The Debtor is unmarried and has no children. *Id.* ¶ 22. The Debtor occasionally sends money to her mother when she is able. *Id.* While there is evidence that the Debtor's mother has provided the Debtor with occasional financial support in the past, Decl. of Sharanya Mohan Ex. A, at 14:5-23 [ECF No. 18-1], the Debtor stated that her family has cut her off and "refuse[s] to provide financial support because they are also having financial difficulties." Letter to J. Lane in Advance of U.S. Dep't Educ.'s Anticipated Mot. Summ. J. at 3 (the "Plaintiff's Pre-Motion Letter") [ECF No. 15].

The Debtor suffers from scoliosis and fibromyalgia and has asked that these conditions be taken into consideration when determining if grounds for a discharge exist. Pl.'s Resp. ¶ 4. But the Debtor admits that these conditions do not prevent her from working and, in fact, she is currently employed full time. *See* Def.'s Resp. ¶ 4 (noting that when the Defendant requested discovery of any relevant medical records, the Debtor responded that "any disability she may have 'has not affected [her] ability to seek work.'"); *see also* Hr'g Tr. 14:21-15:4 ("I also now

---

[5] Prior to finding a job, the Debtor listed $330 as her monthly income on her bankruptcy petition. SMF ¶ 21. At the time of the hearing, however, the Debtor stated she had no income prior to finding full-time work. Hr'g Tr. 20:5-7.

5

have a job using my bachelor's degree . . . I found a job working for a union basically using—doing website design and creating pamphlets. . . . It's a full-time job.").[6]

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a) (made applicable to the adversary proceeding by Fed. R. Bankr. P. 7056). A material fact is one that "might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citations and internal quotation marks omitted). A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Ames Dep't Stores, Inc. v. Wertheim Schroder & Co. (In re Ames Dep't Stores, Inc.)*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993). Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, demonstrate that there is a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324; *Matsuhita Elec. Indus. Co. v. Zenith*

---

[6] When the Defendant requested discovery of her medical records, the Debtor responded that "any disability she may have 'has not affected [her] ability to seek work.'" Def's Resp. ¶ 4. Given that response, the Defendant did not probe the matter further in discovery. *See* Hr'g Tr. 10:16-11:12; Def.'s Resp. ¶ 4.

*Radio Corp.*, 475 U.S. 574, 586-87 (1986) (after the moving party has met its burden under Rule 56(c), opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The non-movant must put forth "significant probative evidence" showing a genuine dispute as to a material fact exists. *Anderson*, 477 U.S. at 249. If the non-moving party fails to make such a showing, then the moving party is "entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(e). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsuhita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Weg v. Macchiarola*, 654 F. Supp. 1189, 1191-92 (S.D.N.Y. 1987).

**B.     The *Brunner* Test**

Student loan debt is not dischargeable in bankruptcy "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Under existing Second Circuit precedent, "[a] debtor carries a heavy burden when she seeks to establish an undue hardship under [S]ection 523(a)(8)." *Williams v. N.Y. State Higher Education Servs. Corp. (In re Williams)*, 296 B.R. 298, 302 (S.D.N.Y. 2003), *aff'd*, 84 F. App'x 158 (2d Cir. 2004). "Because any debtor in bankruptcy usually has significant financial problems, a finding of undue hardship will not be based simply on the debtor's difficulty in making payments." *Id*. (citations omitted). The Bankruptcy Code does not define "undue hardship," but the Second Circuit has developed a test for undue hardship in *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987). Under *Brunner*, a debtor must show:

7

>    (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;
>
>    (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
>    (3) that the debtor has made good faith efforts to repay the loans.

*Id.* at 396. The debtor is obligated to prove each element of the *Brunner* test by a preponderance of the evidence. *Traversa v. Educ. Credit Mgmt. Corp. (In re Traversa)*, 444 F. App'x 472, 474 (2d Cir. 2011) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). "Courts consider multiple factors when determining whether the three-pronged *Brunner* test is satisfied, including the debtor's gross income, age, health, dependents, and marital status." *Williams*, 296 B.R. at 302.

"Some courts and commentators have questioned the continued application of *Brunner*. The Second Circuit, however, continues to follow *Brunner* and has declined to revisit it." *In re Shenk*, 603 B.R. 671, 678 (Bankr. N.D.N.Y. 2019).[7] Thus, *Brunner* remains binding precedent that this Court must apply. *See id.* The Court will separately address each of the three *Brunner* elements.

### 1.    Minimal Standard of Living

"The first element requires a debtor to show that if the debtor, based on current finances, is required to make the monthly student loan payment, the debtor's standard of living will fall below a minimal level." *Thoms v. Educ. Credit Mgmt. Corp. (In re Thoms)*, 257 B.R. 144, 148 (Bankr. S.D.N.Y. 2001) (internal quotations and citations omitted). "To evaluate this element,

---

[7]    *Cf. Bene v. Educ. Credit Mgmt. Corp. (In re Bene)*, 474 B.R. 56, 59, 68-76 (Bankr. W.D.N.Y. 2012) (interpreting anew the meaning of *Brunner* in the context of a more modern loan repayment plan stretching out over 25 years); *Wolfe v. U.S Dep't of Educ. (In re Wolfe)*, 501 B.R. 426, 433-34 (Bankr. M.D. Fla. 2013) (noting that there have been calls for rethinking the *Brunner* test and citing, among other things, decisions in *Roth v. Educ. Credit Mgmt. Corp.*, 480 B.R. 908 (9th Cir. B.A.P. 2013) and *Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882 (7th Cir. 2013)).

8

the court must review current income and expenses considering the particular circumstances of the case." *Id.* (citations omitted).

When evaluating the effect of student loan obligations on a debtor's financials, courts will also consider the timing of the bankruptcy filing in relation to the student loan debts. *See Harrison v. N.Y. State Higher Educ. Servs. Corp. (In re Harrison)*, 60 B.R. 9, 9 (Bankr. E.D.N.Y. 1986). If the debtor concedes that her loans have yet to mature and are not subject to current payments, courts have generally determined that a claim of undue hardship is premature. *See id*. Courts will also consider the effects of an income contingent plan when calculating the debtor's expenses. *See Thoms*, 257 B.R. at 149. In *Thoms*, the court noted there are "various payment plan options available to a debtor who finds its current loan obligations too burdensome" that could be "used to reduce the debt." *Id*. The *Thoms* court found that while the debtor's disposable income was not enough to repay the full amount of the student loan, restructuring of the debt was possible and denied the plaintiff's request to discharge the loans. *See id.*

Applying these principles to the undisputed facts, the Court concludes that the first element cannot be met. Much of Debtor's case rests on her inability to find work. *See, e.g.*, Pl.'s Resp. at 2, 3-4. But the timing of the filing of the Debtor's dischargeability case is problematic. The Debtor requested a discharge of her student loan before the loan matured and before being obligated to make any payments. SMF ¶ 7. As such, her claim that her student loans constitute an undue burden was "at best, premature" when the case was filed. *Harrison*, 60 B.R. at 9; *cf. Brunner*, 831 F.2d at 396-97 (noting that at the time of the hearing on dischargeability of student loans, only ten months had elapsed since the debtor's graduation from her master's program).

9

Even considering her more up-to-date circumstances, the Debtor cannot satisfy the first element based on the undisputed evidence. The Debtor has now found full-time employment and enrolled in an income-based repayment plan. *See* Hr'g Tr. 21:17-22:6. The Court finds that there is no evidence showing that the Debtor's current full-time employment will not be enough to provide her with a minimal standard of living. The Debtor did not provide any evidence that the salary from her current employment is insufficient to provide for her current expenses. As such, the Court is unable to conclude that the Debtor's standard of living will fall below a minimal level.[8] In addition, the Debtor in the instant case is enrolled in an income-based repayment plan under which her monthly payment obligation will be based on her income. *See* Hr'g Tr. at 20:5-11. As the Debtor conceded, this might result in a monthly payment amount of $0. *See id.* at 20:5-7; *see also Brunner*, 831 F.2d at 396 (noting that *Brunner* requires that the debtor's standard of living fall below a minimal standard). As a result of the Debtor's relative youth and her future earnings potential given her impressive educational pedigree, summary judgment for the Government is appropriate as to this element.

### 2. Additional Circumstances

The second prong of the *Brunner* test requires courts to determine whether additional circumstances exist that would demonstrate the debtor is likely to continue living under a minimal standard for a significant portion of his or her repayment period. *See* 831 F.2d at 396. There is a "clear congressional intent exhibited in [S]ection 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *Id*. Therefore, courts require "evidence not only of current inability to pay but also of additional, exceptional circumstances,

---

[8] It appears that the Debtor found employment after the Government's Motion was filed, which would explain why this information is not in the pleadings. But the Debtor presented no evidence or details at the hearing to explain why she would be unable to make income-based repayments in her current circumstances.

10

strongly suggestive of continuing inability to repay over an extended period of time." *Id*. Courts look to see if there is evidence "indicating a total foreclosure of job prospects in [the debtor's] area of training." *Id*. at 396-97. Relevant considerations of additional circumstances may include the existence of disability or illness, advanced age, or responsibility for dependents. Instances of mild hardship, disability, or illness may not be enough to prove the prospect of repayment is futile. *See Thoms*, 257 B.R. at 149-50 (denying discharge when it was likely the debtor's dependents would require less monthly help, reducing her monthly expenses); *Traversa*, 444 F. App'x at 475 (discharge denied when debtor had previously worked while subject to his complained of illnesses and was regularly managing the disorders with medication).

A review of this second element based on the undisputed facts in this case also provides a basis for summary judgment for the Government. In this analysis, the Court finds the current case is comparable to *Brunner*. Like *Brunner*, the Debtor is not disabled, not elderly, and has no dependents. *See Brunner*, 831 F.2d at 396; SMF ¶ 22, 24. Also, like *Brunner*, the Debtor just graduated from a program after receiving an advanced degree. *See* Hr'g Tr. 14:18-19. She filed this adversary proceeding before graduating from the program and thus has not waited to see what her standard of living will look like after graduation. *See Brunner*, 831 F.2d at 397; Hr'g Tr. 14:18-19. Indeed, her employment circumstances markedly changed just after the adversary proceeding was filed, demonstrating the folly of seeking relief at this time. *Cf. Brunner*, 831 F.2d at 397 (finding no evidence to indicate "a total foreclosure of job prospects in [the debtor's] area of training."). The Court therefore concludes that based on the undisputed evidence there is no showing that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396.

The Debtor relies upon a decision from the Southern District of New York, *Jackson v. Educ. Res. Inst. (In re Jackson)*, 2007 WL 2295585, at *7 (Bankr. S.D.N.Y. Aug 9, 2007). *See* Pl.'s Pre-Motion Letter at 1. But the Court finds the Debtor's circumstances to be easily distinguishable from *Jackson*. In *Jackson*, the court found "the Debtor has established that his bipolar disorder is severe enough to impair his present ability to maintain regular employment and repay his loans, and that this condition will persist indefinitely." *Jackson*, 2007 WL 2295585, at *7. The Court noted that its view was "supported by the Debtor's testimony that his condition is chronic since he is receiving, and has received, regular medical treatment for his condition since he was a teenager." *Id.* While the Debtor here suffers from scoliosis and fibromyalgia, she concedes that these conditions do not prevent her from working, and in fact, she is currently employed full time. *See* Hr'g Tr. 14:21-15:2.[9] The Court is sympathetic to the Debtor's request that her "medical conditions should be taken into consideration as I age." Pl.'s Resp. at 2, ¶ 4 (relying on information about these conditions from various articles and noting specifically that scoliosis "progresses as one ages."). But the Debtor has provided nothing as to her own specific medical circumstances that would support relief here, such as an assessment

---

[9] The Court is somewhat puzzled by a contradictory statement in one of the Debtor's written submissions that her medical conditions does impair her ability to seek employment. *See* Pl.'s Resp. at 4. But this statement does not stand in the way of summary judgment on this record for several reasons. As a threshold matter, the Debtor's Complaint does not even seek relief based on a medical condition. *See generally* ECF No. 1. Moreover, she refused to provide discovery as to her medical conditions by representing that "any disability she may have 'has not affected [her] ability to seek work.'" Def.'s Resp. ¶ 4. Indeed, the Debtor made the same representation to the Court in person at the hearing in July. *See* Hr'g Tr. 14:21-15:2. It is well established that a party may not create an issue of fact on summary judgment by providing statements inconsistent with her own prior testimony. *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) (stating that a party may not "defeat[] summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony."). In any event, her previous failure to provide information in discovery on this issue bars her from relying now on this same issue to defeat summary judgment. *See* Fed. R. Civ. P. 37(c)(1) (made applicable to the adversary proceeding by Fed. R. Bankr. P. 7037) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.").

from a medical professional. *See Duval v. IRS (In re Duval)*, 2012 Bankr. LEXIS 1391, *13 (Bankr. S.D.N.Y. April 3, 2012) (observing that "[e]ven in cases where a plaintiff can show a medical disability, courts continue to recognize the heavy burden of requiring a showing that the disability is likely to pose a persistent obstacle to employment.") (citations omitted); *In re Greene*, 484 B.R. 98, 125-26 (Bankr. E.D. Va. 2012) (denying discharge and discussing lack of evidence to support debtor's assertions about a medical condition that would justifying discharge of debtor's student loans).

The only other additional circumstances identified by the Debtor is her contention that she faces bias in the hiring market as an African-American female. *See* Pl.'s Resp. ¶ 5. While the Court understands that discrimination regrettably exists in this world, the Court rejects her argument as a basis for a discharge. As the Government correctly points out, the Debtor has submitted no evidence, admissible or otherwise, to show that she has been the victim of bias in any specific instances. *See* Def.'s Resp. ¶ 5. Such a generalized claim of bias is not a basis for relief here, particularly since the Debtor is currently employed on a full-time basis. *See* Hr'g Tr. 14:21-15:2.

### 3. Good Faith Repayment

The last prong of the *Brunner* test requires courts to determine that the debtor made a good faith effort to repay her student loans. *See Brunner*, 831 F.2d at 396. "Relevant factors to such an inquiry include (1) actual payments made on the loans and (2) attempts by the debtor to seek alternative remedies to discharge, such as deferment of payment." *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 316 (Bankr. S.D.N.Y. 2002) (citing *Thoms*, 257 B.R. at 149). A relevant consideration in an analysis of good faith is the time between the maturing of the student loan and the request for discharge. When a debtor files for discharge within a month of

her first payment coming due, courts have found that she does not exhibit a good faith effort to repay her loans. *See Brunner*, 831 F.2d at 397; *see also Lavoie v. U.S. Dep't of Educ. (In re Lavoie)*, 292 B.R. 504, 507 (Bankr. W.D.N.Y. 2003) (finding that good faith does not exist where a debtor seeks a discharge before the loans have come due). The third prong of *Brunner* acts as a safeguard against a debtor "seek[ing] to have his educational loans discharged before embarking on a lucrative career." *Pincus*, 280 B.R. at 317.

Based on the undisputed evidence, the Court finds that the third element of *Brunner* is inconclusive here. On the one hand, the Debtor has enrolled in an income repayment plan, although the Court has no details as to that plan or whether payments have yet been made.[10] On the other hand, the Debtor filed this action seeking a discharge on April 19, 2018, over four months before the Debtor's first payment of her student loan was due in September 2019. SMF ¶ 7; Hr'g Tr. 21:3-5. For the reasons already explained above, this timing undercuts her request for relief. *See Brunner*, 831 F.2d at 396. If good faith were the only issue in the case, the Court would need additional facts before ruling on the issue. But a Debtor needs to satisfy each of the

---

[10]     There is some debate over whether a debtor's failure to participate in an income-based repayment program, or otherwise make any attempt at repayment, is a bar to obtaining a discharge of student loan debt. *See In re Shenk*, 603 B.R. 671, 680-81 (Bankr. N.D.N.Y. 2019) (finding that failure to make any effort to pay under the circumstances of the case weighed against a finding of good faith under *Brunner*); *In re Abney*, 540 B.R. 681, 687-89 (Bankr. W.D. Mo. 2015) (concluding that participation in an income-based repayment plan is a merely a factor in determining undue hardship). But the Court does not need to weigh in on that debate given that the Debtor here is enrolled in an income repayment plan.

   The Debtor did rely on two specific cases for her contention that "the failure to make a payment, standing alone does not establish a lack of good faith." Pl.'s Resp. at 4-5 (citing *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1311 (10th Cir. 2004); *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1327 (11th Cir. 2007) (quoting *Polleys*, 356 F.3d at 1311)). But the facts of both these cases are distinguishable from this case. In *Polleys*, the Court found that "unlike in *Brunner*, where the debtor 'filed for discharge within a month of the date the first payment of her loans came due . . . [and never] requested a deferment of payment,' Ms. Polleys did not immediately seek to discharge her student loan obligation after it came due." *Polleys*, 356 F.3d at 1311-12. In *Mosley*, the Court found "Mosley has attempted to find work, as demonstrated by the series of jobs he held while living with his mother from 1994 to 1999 and his participation in the labor pool since 2000." *Mosley*, 494 F.3d at 1327.

14

three elements of the *Brunner* test. Given the Court's conclusions above as to the first two elements of the *Brunner* test, the Court does not need to rule on the merits of this third element in order to grant summary judgment to the Government.

## CONCLUSION

For the reasons stated above, the Court grants the Defendant's motion for summary judgment and concludes that the Debtor's student loans are not dischargeable under Section 523(a)(8) of the Bankruptcy Code. The Defendant should submit a proposed order on seven days' notice. The proposed order should address both the Defendant's motion for summary judgment and the Debtor's request to seal certain materials in this adversary proceeding.[11] The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon the Plaintiff.

Dated: New York, New York
      October 10, 2019

*/s/ Sean H. Lane*
UNITED STATES BANKRUPTCY JUDGE

---

[11] The Debtor and the Government have reached an agreement on the Debtor's request to seal records in this adversary proceeding, pursuant to which the Debtor has agreed to narrow her request to seal only the first page and the last three pages of Exhibit 3 to the Plaintiff's Response. *See* ECF Nos. 33, 38. For the reasons explained in the Government's letter, the Court agrees that sealing this more limited set of pages is appropriate.